UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------X

FANTASIA DISTRIBUTION, INC.,

          Plaintiff,            **MEMORANDUM & ORDER**

  - against -            No. 20-CV-02378(KAM)(CLP)

MYLE VAPE, INC., et al.,

          Defendants.

----------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

On May 28, 2020, Plaintiff Fantasia Distribution, Inc. ("Fantasia" or "Plaintiff"), a California corporation that sells, markets, and distributes e-cigarette, vaping, hookah, tobaccos, and smoking-related products, commenced this action alleging claims for federal and common law trademark infringement and unfair competition, and other common law and state law claims based on Fantasia's "ICE" marks. The Complaint named six entities that manufacture or distribute liquids for use in electronic cigarettes and prefilled disposable e-cigarettes: Myle Vape, Inc. ("Myle Vape"), Cool Clouds Distribution, Inc. ("Cool Clouds"), Access Vapor, LLC ("Access Vapor"), Limitless Trading Co., LLC ("Limitless Trading"), Pop Vapor Co., LLC ("Pop Vapor"), and Romeo Vapors, Inc. ("Romeo Vapors," and together with Myle Vape, Cool

Clouds, Access Vapor, Limitless Trading and Pop Vapor, the "Original Defendants"). (ECF No. 1, Compl.)

On April 4, 2023, Fantasia and Defendant Myle Vape stipulated to dismiss Myle Vape pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii). (ECF No. 95.) On February 11, 2022, Magistrate Judge Pollak granted a motion for Cool Clouds' then-attorneys to withdraw. (ECF No. 71.) Judge Pollak ordered Cool Clouds to obtain new counsel by March 28, 2022, and warned that "failure to retain counsel may result in a default being entered against" Cool Clouds. (*Id.*) Cool Clouds never obtained new counsel, and the Court's February 11, 2022 order mailed to Cool Clouds was returned as undeliverable on February 14, 2022. (*See* ECF No. 72.) Fantasia has not moved for default against Cool Clouds.

The remaining Defendants—Access Vapor, Limitless Trading, Pop Vapor, and Romeo Vapors (collectively, "Defendants") manufacture or distribute liquids for use in electronic cigarettes and prefilled disposable e-cigarettes. The Defendants move this Court for summary judgment on all remaining claims against Defendants and on their counterclaims against Fantasia concerning Fantasia's two "ICE" Trademarks described below. Defendants seek summary judgment: (1) dismissing with prejudice Fantasia's Complaint alleging claims of federal and common law trademark infringement; federal and common law claims of unfair competition; various state law claims of unfair and deceptive trade practices; and unfair

2

competition under New York Law, and (2) on Defendants'
counterclaims cancelling Fantasia's U.S. Trademark Registration
Nos. 3,998,201 (the "'201 Registration") and 4,600,173 (the "'173
Registration") for the term "ICE" for tobacco products and for
tobacco products and e-cigarette liquid, respectively
(collectively, the "ICE Trademarks"). (*See* ECF No. 102,
Defendants' Motion, at 1 ("Defs. Mot.").) In the event that this
Court cancels Fantasia's trademarks, Defendants further seek
certification of an Order to the Director of the U.S. Patent and
Trademark Office cancelling the marks in accordance with 15 U.S.C.
§ 1119; and that the Court declare, adjudge, and decree that
Defendants' past use of the words "ice" or "iced" has not infringed
on the legal rights of Fantasia; declare that this is an
"exceptional case" that warrants attorney's fees against Fantasia;
and award Defendants such other and further equitable relief as
the Court may deem just and proper.

For the reasons below, the Court grants Defendants' summary
judgment motion against Fantasia's claims and grants Defendants'
summary judgment motion on its cancellation counterclaims.

<u>**Background**</u>

**I. Factual Background**

The following facts are taken from the parties' Local Rule
56.1 statement, counter-statement, and reply, as well as from
documents cited in the parties' Local Rule 56.1 statements. (*See*

3

ECF No. 102-2, Defendants' Rule 56.1 Statement ("Defs. 56.1"); ECF No. 103-6, Plaintiff's Rule 56.1 Statement ("Pl. 56.1"); ECF No. 104-1, Defendants' Rule 56.1 Statement Reply ("Defs. Reply.")) Except as otherwise indicated, the facts below are undisputed. The Court summarizes only those facts relevant and material to adjudicate the instant motion.

Fantasia owns two trademarks for the term "ICE" registered with the United States Patent and Trademark Office. (Pl. 56.1 ¶ 21; ECF No. 103-7, Exhibit A; ECF No. 103-8, Exhibit B.)

First, Fantasia is the owner of "ICE" Trademark Registration '201 for the goods and services of "Hookah tobacco; Molasses tobacco; Smoking tobacco; Tobacco" under International Class 34, used in commerce since 2009. (Pl. 56.1 ¶¶ 21-22; ECF No. 103-7, Exhibit A at 1.)[1]

Second, Fantasia is the owner of "ICE" Trademark Registration '173 for the goods and services of "'Electronic hookah liquid (e-liquid) consisting of flavorings in liquid form used to fill electronic hookahs or electronic hookah cartridges; Vapor liquid consisting of flavorings in liquid form used to fill electronic cigarette vaporizers or vaporizing cigarette cartridges' under International Class 30 and 'Hookah tobacco; Herbal molasses; Herbs for smoking; Molasses tobacco; Smoking molasses; Shisha; Vapor

_____

[1] Unless otherwise noted, citations reference the ECF page numbers.

stones for electronic hookahs; Electronic hookahs; Cartomizers, namely, combination electronic cigarette refill cartridges sold empty and atomizers, sold as a component of electronic cigarettes' under International Class 34," also used in commerce since 2009. (Pl. 56.1 ¶¶ 21, 23; ECF No. 103-8, Exhibit B at 1-2.)

Both of Fantasia's registered ICE Trademarks have achieved the legal status of incontestable under 15 U.S.C § 1065. (Pl. 56.1 ¶ 24; ECF No. 103-7, Exhibit A at 3; ECF No. 103-8, Exhibit B at 4.)

Today, at least 58 manufacturers, as well as Defendants, use the term "ice" or "iced" on e-liquid and prefilled disposable e-cigarette products. (Defs. 56.1 ¶ 1; ECF No. 102-5, Exhibit 1 to the Hyland Declaration ("Defs. Ex. 1"); ECF No. 102-8, Exhibit 4 to Hyland Declaration ("Defs. Ex. 4").) Fantasia does not dispute that others in the industry use the term "ice" or "iced" on their products but disputes that the terms are used to indicate a cooling sensation. (Pl. 56.1 at 2.)[2]

## II. Procedural Background

In its Complaint, Fantasia alleges that the Original Defendants infringed upon the ICE Trademarks, as well as United States Trademark Registration No. 3,812,330 (the "PINK LEMONADE Trademark"). (ECF No. 1, Compl. ¶¶ 16-22.) Alongside the instant

---

[2] Fantasia's 56.1 Statement does not use paragraphs consistently and is cited to the ECF pages where applicable.

action, Fantasia filed a second lawsuit[3] against multiple manufacturers and distributors of e-cigarette products alleging claims similar to the instant action.

Fantasia subsequently decided not to pursue enforcement of the PINK LEMONADE Trademark against all Defendants and dismissed those claims on August 19, 2022. (ECF Nos. 66, 87.) On September 18, 2023, counsel to Access Vapor, the only remaining defendant at that point with a pending counterclaim to cancel the PINK LEMONADE mark, notified the Court that it stipulated to the dismissal of its counterclaim seeking cancellation of the PINK LEMONADE mark, and that further, the USPTO had cancelled the PINK LEMONADE mark on February 5, 2021, rendering any counterclaims seeking its cancellation moot. (*See* ECF No. 97.)

In remaining part, Fantasia's Complaint asserts, *inter alia*, that Defendants' use of "ice" and "iced" on certain products violated Fantasia's ICE Trademarks. Fantasia brings claims of Federal Trademark Infringement under 15 U.S.C. § 1114; unfair competition under 15 U.S.C. § 1125(a); state law claims of unfair and deceptive trade practices; common law trademark infringement and unfair competition; and unfair competition under New York law. (ECF No. 1, Compl. at 8-24.)

---

[3] The second case, *Fantasia Distribution, Inc. v. Magellan Technology, Inc. et al*, Case No. 2020-cv-04340 (KAM) (VMS) (EDNY), is also before this Court.

Defendants answered and asserted counterclaims to cancel Fantasia's ICE Trademarks based on genericness. (ECF No. 14, Limitless Trading and Pop Vapor Answer and Counterclaim at 18-20 (counterclaim to cancel ICE Trademarks under 15 U.S.C. § 1119); ECF No. 23, Access Vapor Answer and Counterclaim at 17-18 (same); ECF No. 46, Romeo Vapors Answer and Counterclaim at 29-30 (same).)[4]

Prior to Defendants' instant motion, the parties each filed motions to preclude the others' respective experts under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). On September 20, 2023, this Court granted Fantasia's motion to exclude the testimony and declaration of Defendants' marketing expert, Amy Netherton, but denied Fantasia's motion to exclude the testimony of Thomas Maronick, Defendants' expert on the consumer perception of "ICE," including Dr. Maronick's corresponding survey and report; in turn, the Court granted Defendants' motion to exclude Plaintiff's proffered expert testimony and Declaration of Julie Trinth. *See Fantasia Distribution, Inc. v. Cool Clouds Distribution, Inc.*, 693 F. Supp. 3d 335 (E.D.N.Y. 2023). The Court found moot the Defendants' motion to exclude declarations of Yousef Nasereddin, Ziad Meziab, and Sami Romman as Fantasia's expert statements; the

---

[4] Romeo Vapors also counterclaims to cancel Fantasia's ICE Trademarks based on fraud and lack of secondary meaning. (*See* ECF No. 46, Romeo Vapors Answer and Counterclaim at 23, 30.) However, because Defendants' memorandum in support of summary judgment does not raise arguments on secondary meaning or fraud, the Court does not address Romeo Vapors' counterclaims to cancel based on secondary meaning or fraud.

parties ultimately agreed that Nasereddin, Meziab, and Romman are fact witnesses. (*See id.*)

On December 21, 2023, Defendants filed the instant motion for summary judgment (1) to dismiss Fantasia's Complaint against the Defendants, and (2) on Defendants' counterclaims against Fantasia.

## Legal Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is 'genuine' if a reasonable jury could return a verdict for the non-moving party," and "a fact is 'material' if it might affect the outcome of the case under the governing law." *Minto v. Molloy Univ.*, No. 16-CV-276 (KAM) (AYS), 2024 WL 436956, at *6 (E.D.N.Y. Feb. 6, 2024) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"'[W]hen the moving party has carried its burden[,]...its opponent must do more than simply show that there is some metaphysical doubt as to the material facts[.]'" *Khan v. Addy's BBQ LLC*, 419 F. Supp. 3d 538, 566 (E.D.N.Y. 2019) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). The non-moving party "must offer 'some hard evidence showing that its version of the events is not wholly fanciful[.]'" *Id.* (quoting *Miner v. Clinton County, N.Y.*, 541 F.3d 464, 471 (2d Cir. 2008) (quotations and citation omitted)).

Indeed, "when reasonable minds could not differ as to the import of the proffered evidence, then summary judgment is proper." *Horizon Mills Corp. v. QVC, Inc.*, 161 F. Supp. 2d 208, 211 (S.D.N.Y. 2001) (citing *Anderson*, 477 U.S. at 250-52; *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991)). In other words, although "[a]ll ambiguities must be resolved in favor of the non-moving party and all permissible inferences from the factual record must be drawn in that party's favor," *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010), ultimately, where "a rational trier of fact" cannot find for the non-moving based on "the record taken as a whole," there is no "genuine issue for trial," and summary judgment is appropriate, *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation omitted).

Further, although determining a trademark's genericness is "generally one of fact," *Tiffany & Co. v. Costco Wholesale Corp.*, 994 F. Supp. 2d 474, 482 (citing *Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033, 1039 (2d Cir. 1992)), a court may make such determinations on a motion for summary judgment, *see Lemme v. Nat'l Broad. Co.*, 472 F. Supp. 2d 433, 443 (E.D.N.Y. 2007) (footnote omitted) ("[S]ummary judgment is as appropriate in trademark cases as any other where there are no material disputes of fact."); *Horizon Mills Corp.*, 161 F. Supp. 2d at 211 (collecting cases). Accordingly, a court may grant summary judgment if the

moving party demonstrates there is no genuine issue of material fact as to genericness. *See Universal Church, Inc. v. Universal Life Church/ULC Monastery*, No. 14-CV-5213 (NRB), 2017 WL 3669625, at *5 (S.D.N.Y. Aug. 8, 2017), *aff'd sub nom. Universal Church, Inc. v. Toellner*, 752 F. App'x 67 (2d Cir. 2018) (granting summary judgment in part to cancel a mark based on genericness).

## Discussion

At bottom, this case concerns the use of a trademarked term that covers tobacco products and liquids for smoking products like electronic cigarettes and vaping devices. Fantasia asserts that Defendants violate its ICE Trademarks by using "ice" or "iced" on their products. Defendants argue that Fantasia's marks are generic and should be cancelled and, regardless, Defendants' use of "ice" and "iced" is fair use.

### I. Whether the ICE Trademarks are Generic

Defendants argue that Fantasia's ICE Trademarks are generic. This argument underpins both Defendants' summary judgment motion against Fantasia's claims and Defendants' cancellation counterclaims. Accordingly, the Court first addresses whether the ICE Trademarks are generic. *See Solid 21, Inc. v. Richemont N. Am., Inc.*, No. 19-CV-1262 (LGS), 2023 WL 3996530, at *3 (S.D.N.Y. June 14, 2023) (first analyzing genericness on cross-motions for summary judgment where plaintiff alleged, *inter alia*, trademark infringement, and defendants counterclaimed to cancel plaintiff's

mark based on genericness). For the reasons below, the Court finds
that "ice" and "iced" are generic.

## A. Determining Whether a Mark is Generic

A federal trademark registration "constitutes a strong
presumption that the term is not generic, or, if merely
descriptive, is accorded secondary meaning by the relevant
public." *Horizon Mills Corp.*, 161 F. Supp. 2d at 214. When a
registered mark has been used continuously for five consecutive
years after registration, and is still in use in commerce, the
mark is "incontestable." *See* 15 U.S.C. § 1065. An incontestable
mark "shall be conclusive evidence...of the registrant's exclusive
right to use the registered mark in commerce." *Tiffany & Co.*, 994
F. Supp. 2d at 480 (quoting *Gruner + Jahr USA Pub. v. Meredith
Corp.*, 991 F.2d 1072, 1076 (2d Cir. 1993)); *see also Park 'N Fly,
Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194-95 (1985)
(noting that incontestable status provides conclusive evidence of
a registrant's exclusive right to use the registered mark).

At the same time, "[g]eneric terms are not registrable, and
a registered mark may be canceled at any time on the grounds that
it has become generic." *Park 'N Fly, Inc.*, 469 U.S. at 194. Indeed,
the "assertion that a trademark is generic presents a defense,
even to an incontestable trademark, because generic terms cannot
be trademarked in the first place." *Fantasia Distribution, Inc.*,
693 F. Supp. 3d at 351; *see also, e.g., Park 'N Fly, Inc.*, 469

U.S. at 195 (noting that "[a]n incontestable mark that becomes generic may be canceled at any time"). Though there is "difficulty involved in precisely defining the generic and descriptive categories" because "[t]he lines of demarcation...are not always bright," "the distinction is critical because 'if determined to be generic, [a] term can never function as a mark or be given trademark protection; but if determined to be descriptive, the term can be given trademark protection upon proof of secondary meaning,' referring to consumers' recognition of the term and association with a source." *Horizon Mills Corp.*, 161 F. Supp. 2d at 212 (quoting *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir. 1976) and 2 McCarthy on Trademarks and Unfair Competition § 12-20 at 12-53 (4th ed.1999)).

"[A] mark is generic if, in the mind of the purchasing public it does not distinguish products on the basis of source but rather refers to the type of product." *Courtenay Commc'ns Corp. v. Hall*, 334 F.3d 210, 214 n.2 (2d Cir. 2003). Further, "[g]eneric terms are not limited to nouns that directly name a product; instead, they may also be adjectives which name some distinctive characteristic of a genus of products." *Lemme*, 472 F. Supp. 2d at 441 (quoting 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 12:10 at 12-24 (4th ed 2006)); *see Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137, 148-49 (2d Cir. 1997) (finding "Honey Brown Ale" a generic mark for a brown ale

brewed with honey); *Miller Brewing Co. v. G. Heileman Brewing Co.*, 561 F.2d 75, 80-81 (7th Cir. 1977) (finding the word "'light,' including its phonetic equivalent 'lite,'" was "a generic or common descriptive term as applied to beer" and noting that "[t]he fact that 'light' is an adjective does not prevent it from being a generic or common descriptive word").

At its core, a generic mark "answers the question 'What are you?' while a valid trademark answers 'Who are you?'" *Universal Church, Inc.*, No. 14-CV-5213 (NRB), 2017 WL 3669625, at *5 (citing 2 McCarthy on Trademarks and Unfair Competition § 12:1 (4th ed.)). A generic term "is a common name...that describes a kind of product." *Meredith Corp.*, 991 F.2d at 1075.

Title 15 U.S.C. § 1064 (3) provides in relevant part, "[t]he primary significance of the registered mark to the relevant public rather than purchaser motivation shall be the test for determining whether the registered mark has become the generic name of goods or services on or in connection with which it has been used." Ultimately, "the 'primary significance test' is the law of the land[.]" *Genesee Brewing Co.*, 124 F.3d at 144 (citing *Kellogg Co. v. National Biscuit Co.,* 305 U.S. 111, 118 (1938)). "In order to become generic the *principal* significance of the word must be its indication of the nature or class of an article, rather than an indication of its origin." *Id.* (quoting *King-Seeley Thermos Co. v.*

*Aladdin Indus.*, Inc., 321 F.2d 577, 580 (2d Cir. 1963) (citation and internal quotation marks omitted)) (emphasis in original).

## B. Demonstrating that a Mark is Generic

In determining "a mark's understanding in the consuming public, the Second Circuit has articulated a non-exhaustive list of competent sources that can be considered, 'including consumer surveys, testimony of consumers or trade professionals, dictionary definitions, uncontested usage of the mark by competitors to describe their products, generic usage in newspaper and magazine articles, and generic usage by the proponent of the trademark.'" *FragranceNet.com, Inc. v. Les Parfums, Inc.*, 672 F. Supp. 2d 328, 333 (E.D.N.Y. 2009); *see also Pilates, Inc. v. Current Concepts, Inc.*, 120 F. Supp. 2d 286, 297 (S.D.N.Y. 2000) (reviewing similar evidence after a bench trial to determine plaintiff's marks were generic); *Horizon Mills Corp.*, 161 F. Supp. 2d at 214 (reviewing similar evidence on summary judgment); *Frito-Lay, Inc. v. Bachman Co.*, 704 F. Supp. 432, 440 (S.D.N.Y. 1989) (same). No specific type of evidence is required to show a mark is generic; however, "it is unlikely that any [type of evidence], standing alone, will constitute conclusive proof that the contested mark has been appropriated by the public." *Horizon Mills Corp.*, 161 F. Supp. 2d at 214.

Further, "[i]n addition to these factors, it is necessary to determine whether there are commonly used alternative means to

14

describe the product or service." *Pilates, Inc.*, 120 F. Supp. 2d at 297 (citing *Genesee Brewing Co.*, 124 F.3d at 144).

## C. Evidence as to Whether "Ice" is Generic

Here, Defendants produced undisputed evidence of other competing manufacturers' uncontested uses of "ice" and "iced"; Defendants' own uses of "ice" and "iced"; uses of "ice" in news articles and online; and a consumer survey and corresponding expert report analyzing the survey. Further, the record does not indicate there are commonly used alternatives to "ice" or "iced." Finally, Fantasia's proffered evidence fails to create any genuine dispute of material fact as to whether "ice" is generic as to tobacco products and liquids for smoking products like electronic cigarettes and vaping devices.

## 1. Industry Uses of "Ice" and "Iced"

"Generic use of a term by a trademark holder's competitors weighs in favor of genericness." *Pilates, Inc.*, Inc., 120 F. Supp. 2d at 297-98. Here, Defendants produced images of fifty-eight non-party manufacturers of e-liquids and prefilled disposable e-cigarettes, in addition to the Defendants, that use the word "ice" or "iced" on their products "to describe flavors that create a cooling sensation." (Defs. 56.1 ¶ 1; Defs. Ex. 1.)[5] Defendants also

---

[5] As explained, *infra*, Fantasia mistakenly argues in passing that "Hyland Exhibits 1, 2 and 3 are unreliable hearsay which were rejected as hearsay material when relied upon by Defendants' excluded expert Ms. Netherton." (ECF No. 103, Pl. Mem. at 3 (citing to internal pagination).) Defendants' Hyland Exhibit 1 shows "[p]ictures of third-party products bearing 'ice' or 'iced'

produced images showing how Defendants themselves use the word "ice" to "signify a particular flavor has a cooling effect." (Defs. 56.1 ¶ 5; Defs. Ex. 4.)

Though Fantasia disputes that the images in Exhibit 1 show competitor manufacturers using "ice" or "iced" to "describe flavors that create a cooling sensation," it does not dispute the images' veracity, nor does it cite to any admissible evidence to create a genuine dispute with Defendants' showing that "ice" describes a cooling sensation. (Pl. 56.1 at 2.) In turn, Fantasia does not appear to dispute that Defendants use "ice" to "signify that a particular flavor has a cooling effect." (*Id.* at 4-5.) Instead, Fantasia responds in a circular and conclusory manner that Fantasia itself uses "ICE" as a trademark and reiterates that the marks are incontestable. (*Id.*) "In order to become generic the principal significance of the word must be its indication of the nature or class of an article, rather than an indication of its origin." *FragranceNet.com, Inc.*, 672 F. Supp. 2d at 333 (quoting *King-Seeley Thermos Co.*, 321 F.2d at 580).

---

marks and table summarizing images" from manufacturers of e-liquids and prefilled disposable e-cigarettes; Hyland Exhibit 2 shows "[s]creenshots from Reddit where users discussed 'ice' products and authentication of same"; and Hyland Exhibit 3 shows "[n]ews articles referring to 'ice' as a generic term" to describe e-juices. (ECF No. 102-4, Hyland Declaration at 2-3; Defs. 56.1 ¶¶ 1, 3-4). The Court addresses the hearsay arguments as to Exhibits 2 and 3 below. As to Exhibit 1, to the extent Fantasia argues that the images are inadmissible, the Court disagrees for the same reasons noted at pages 24-25 regarding the Reddit posts. Indeed, Fantasia cites no rule of evidence, case law, or other justification to argue that images in Exhibit 1 of third-party products offered to illustrate the use of the words "ice" or "iced," and a table summarizing those images, are inadmissible hearsay.

Here, Defendants' Exhibits 1 and 4 show images, respectively, of product packaging from the fifty-eight non-party, competing manufacturers of e-liquids and prefilled disposable e-cigarettes that use the word "ice" or "iced", and images of Defendants' products, which use "ice" or "iced," but not as an "indication of its origin" or source, but rather as an "indication of the nature or class of" the non-party manufacturers' and Defendants' products. *FragranceNet.com, Inc.*, 672 F. Supp. 2d at 333. Defendants' Exhibit 1 and Exhibit 4 show that the fifty-eight manufacturers and Defendants themselves use "ice" or "iced" generically to indicate product flavors with a cooling sensation, and not as a source identifier. (Defs. 56.1 ¶¶ 1, 5; Defs. Ex. 1 & 4). For example, the images in Defendants' Exhibits 1 and 4 show "ice" used in conjunction with or adjacent to flavor descriptions (e.g., "Banana Ice," "Mango Ice"). Moreover, the word "ice" in Defendants' Exhibits 1 and 4 is also generally featured less prominently in smaller typeface than the larger typeface for the competitors' and Defendants' own brand names. (*See, e.g.*, Exhibit 1 at 6; Exhibit 4 at 17); *see Cosmetically Sealed Indus. v. Chesebrough-Pond's USA Co.*, 125 F.3d 28, 30 (2d Cir. 1997) (analyzing fair use and noting that the "non-trademark use of the challenged phrase...[was] evidenced by the fact that the source of the defendants' product is clearly identified by the prominent display of the defendants' own trademarks").

17

Further, a competitor's generic use of a mark that the trademark holder has not challenged "strongly supports a finding of genericness." *Pilates, Inc.*, 120 F. Supp. 2d at 297-98. It is undisputed that Fantasia did not enforce its ICE Trademarks prior to 2018, as Fantasia admits that, though it registered the ICE Trademarks in 2011 and 2014, it was "unaware of any use of the term 'ICE' by any other companies until late 2018." (ECF No. 103, Pl. Mem. at 2.)[6]

## 2. Consumer Survey Data

"Consumer surveys are routinely admitted in trademark cases to show genericness of a mark." *Pilates, Inc.*, 120 F. Supp. 2d at 302 (citing *Schering Corp. v. Pfizer, Inc.*, 189 F.3d 218, 225 (2d Cir. 1999)); *see also Horizon Mills Corp.*, 161 F. Supp. 2d at 212-13 (finding that "on summary judgment, a consumer survey would be particularly helpful in divining what the principal significance of [the term at issue] is to the consuming public").

Here, Defendants offer results of a consumer survey conducted by Dr. Maronick and a corresponding report analyzing the results. (Defs. 56.1 ¶ 2; ECF No. 102-3, Exhibit A (the "Maronick Survey and Report").) Fantasia disputes Dr. Maronick's conclusions but without offering or citing to any admissible evidence. (*See* Pl. 56.1 at 2-3.) Further, in its *Daubert* decision, this Court has

---

[6] Citing to internal pagination.

already discussed the admissibility of the Maronick Survey and Report and denied Fantasia's motion to exclude them. *See Fantasia Distribution, Inc.*, 693 F. Supp. at 352 ("[T]he Court finds that the Maronick Survey is both admissible under FRE 803(3) and FRE 702, and that the analysis within the Maronick Report is supported by sufficient data insofar as the analysis is based on the results of the Maronick Survey.").

The survey specifically targeted respondents in the e-cigarette and vaping devices markets. (Maronick Survey and Report at 3.) In turn, the report analyzes the survey results to determine whether responding consumers believed the word "ice" or "iced" on a product in the relevant market identifies "a particular company, organization, or brand." (*Id.*) The Maronick Survey and Report showed that 82% of respondents believed that "ice" is a common word and not a brand name and that 87% of respondents believe the word "iced" is a common word and not a brand name. (*Id.* at 5-6.) These results are strong evidence of a mark's genericness. *See King-Seeley Thermos Co.*, 321 F.2d at 579-80 (finding "thermos" had entered the public domain in part where "about 75% of adults in the United States who were familiar with containers that keep the contents hot or cold, call such a container a 'thermos'"); *FragranceNet.com, Inc.*, 672 F. Supp. 2d at 337 ("[T]he determination of whether a product's mark is generic involves a

19

determination of 'how the purchasing public *for the particular good* perceives the mark.'" (emphasis in original)).

Here, the report specifically concludes "that the vast majority of respondents in the target market for electronic cigarettes or vaping devices (i.e., 82.0%) believe 'Ice' is a common word and not a brand name," and that an "even higher percentage (87.0%), believe 'Iced' is a common word and not a brand name." (Maronick Survey and Report at 8.) "Therefore, consumers in the target market for electronic cigarettes or other vaping devices [who] see the words 'Ice' or 'Iced,'...on a vaping product in the marketplace would be unlikely to believe either word/phrase is identifying a particular company or organization." (*Id.*)

Fantasia's response to the Maronick Survey and Report—albeit without citing to admissible evidence—is that Defendants fail to show that "ice" is a generic term as to a smoking product, and instead Defendants only show that the general public understands "ice" to be a common word, namely, for frozen water. Specifically, Fantasia argues that the "study fails to address [that] the sole issue in this case[] is [whether] the term ICE [is] generic for products in the vaping industry." (*See* ECF No. 103, Pl. Mem. at 6, 9.)[7]

---

[7] Citing to internal pagination.

This Court, again, is unpersuaded by Fantasia's unsupported argument, which Fantasia raised in its *Daubert* motion and which this Court rejected. *See Fantasia Distribution, Inc.*, 693 F. Supp. 3d at 353. This Court again finds, as it did previously, that Fantasia's "assertion that the Maronick Survey and Maronick Report serve only to prove that 'the majority of English speakers would agree that "ice" is a common word' to refer to 'frozen water' discounts the fact that (1) the population of survey participants was limited to members of the relevant consumer group, and that (2) respondents were prompted to draw explicit comparisons between the relevant terms as 'common words' and as 'brand names.'" *Id.* at 348-49.

This Court further noted, again, that "the Maronick Survey purports to do more than demonstrate that the relevant terms are common in the abstract-the survey asks respondents, e-cigarette and vaping-product consumers, whether they associate the relevant terms with a brand or whether they think [of] the relevant terms as common, descriptive words-in other words, whether the survey respondents view the relevant terms as generic." *Id.* at 351-52 (further noting that "the assertion that a trademark is a common and descriptive, and, therefore, generic term, if true, is applicable grounds for cancellation of a registered trademark, even one registered under 15 U.S.C. § 1115" and reiterating that "the Maronick Report and the Maronick Survey are clearly relevant

to the question of whether the ICE Trademarks are generic and therefore cancellable, which is the subject of Defendants' counterclaims and a core issue in the instant action").

Further, relying on Defendants' survey by Dr. Maronick, Fantasia argues that because 14.5% of survey respondents associate "ice" with an unidentified brand name, and 7.5% associate "iced" with an unidentified brand name, a genuine dispute of material fact exists. Even drawing all permissible and favorable inferences from the factual record in Fantasia's favor, Fantasia's argument is unavailing, because the Second Circuit has found that, as in the Defendants' Maronick Survey, where the "great majority of those members of the public who use the word" are "not aware of any trademark significance" and the mark lacks an association with a brand or source, the mark is generic and not entitled to protection. *King-Seeley Thermos Co.*, 321 F.2d at 579, 581 (finding "thermos" entered public domain in part where "about 75% of adults in the United States who were familiar with containers that keep the contents hot or cold, call such a container a 'thermos'").

Here, the Maronick Survey finds that 82% and 87% of respondents, respectively, do not associate the terms "ice" and "iced" with a brand, and that the "ice" and "iced" terms are not an indication of Fantasia itself to those respondents. *See Courtenay Commc'ns Corp.*, 334 F.3d at 214 n.2 ("[A] mark is generic if, in the mind of the purchasing public it does not distinguish

22

products on the basis of source but rather refers to the type of product.")

### 3. Internet Forum Posts

Defendants produced online Reddit forum posts from 2021 where users discuss e-cigarette and vaping products using the word "ice." (Defs. 56.1 ¶ 3; ECF No. 102-6, Exhibit 2 to the Hyland Declaration, (the "Reddit Posts").) Fantasia does not dispute the existence of the posts but disputes that the posts are admissible because they were "rejected as hearsay material when relied upon by Defendants' excluded expert Ms. Netherton" and that "[a]s stated by the Court, a review of internet forums is not reliable evidence." (Pl. 56.1 at 3-4; ECF No. 103, Pl. Mem. at 3.)[8] Fantasia further disputes – as above, without citing to any admissible evidence - that the Reddit Posts demonstrate generic uses of the word "ice." (Pl. 56.1 at 3-4.)

As to the admissibility of the Reddit Posts, Fantasia misunderstands this Court's prior *Daubert* opinion. Although this Court's *Daubert* opinion addressed statements from an online messaging board from 2013 (which are distinct from the 2021 Reddit posts proffered here) in Exhibit 1 of the Netherton Declaration, the Court held that the "core deficiency in Netherton's interpretation of the statements contained in the online messaging

---

[8] Citing to internal pagination.

board sampled in Exhibit 1 is that neither [Netherton] nor
Defendants provide support for the use of such statements as
evidence of the market-level observations she presents." *Fantasia
Distribution, Inc.*, 693 F. Supp. at 354-55. Although this Court
determined that "online messaging forums sampled in Exhibit 1 are
not the product of rigorous processes and methodology employed in
obtaining survey evidence, and therefore do not warrant the same
treatment as survey evidence," the Court did not find inadmissible
the online messaging board statements based on the rule against
hearsay. *Id.* at 355. Indeed, this Court specifically noted that
"[t]he parties' discussion of the hearsay rule as it relates to
the comments on the 2013 online messaging board reflected in
Exhibit 1 to the Netherton Declaration misapprehends the main
issue," that the online messaging board did not support Netherton's
market-level observations. *Id.* at 354.

Further, if materials "are not being introduced for a hearsay
purpose, i.e., 'to prove the truth of the matter[s] asserted,'
Fed. R. Evid. 801(c). . .then they are not hearsay, and no such
exception is needed." *Rivera v. Inc. Vill. of Farmingdale*, 29 F.
Supp. 3d 121, 128-29 (E.D.N.Y. 2013). Here, the Reddit Posts are
not offered by Defendants for the truth of any matter asserted in
the statements; instead, they show how consumers use the term "ice"
when discussing smoking product flavors. *See RVC Floor Decor, Ltd.
v. Floor & Decor Outlets of Am., Inc.*, No. 18-CV-6449 (JS) (ARL),

2023 WL 2403258, at *9 (E.D.N.Y. Mar. 7, 2023) ("[I]f the Instagram Post is offered for the limited purpose of demonstrating general confusion on the part of customers, the customer complaint would not be hearsay since it is not being offered for the truth of the matter asserted.").

Even if the Reddit Posts were hearsay, they may still be admissible under Federal Rule of Evidence 803(3) as a "statement of the declarant's then-existing state of mind" as to the use of "ice" and certain variations. Fed. R. Evid. 803(3); *see also Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993, 1003-04 (2d Cir. 1997) (finding "no hearsay problem" where the "testimony in question was not offered to prove that [plaintiff] was actually selling to some retailers at lower prices, but was probative of the declarant's confusion," and "[f]urther, [that] Federal Rule of Evidence 803(3) allows statements, otherwise excluded as hearsay, to be received to show the declarant's then-existing state of mind"); *RVC Floor Decor, Ltd.*, No. 18-CV-6449 (JS) (ARL), 2023 WL 2403258, at *9 (noting that although "the Instagram Post is offered for the limited purpose of demonstrating general confusion on the part of customers" and thus "the customer complaint would not be hearsay since it is not being offered for the truth of the matter asserted," "a customer complaint may also be admissible under Rule 803(3) as a statement showing the declarant's then-existing state of mind"); *GoSMiLE, Inc. v. Dr. Jonathan Levine, D.M.D. P.C.*, 769

F. Supp. 2d 630, 647 (S.D.N.Y. 2011) ("The online product reviews are admissible non-hearsay only for the fact that the online comments were made, and they are not considered for [] the truth of their contents....The online reviews have some probative value as to consumer perceptions of the products' quality.").

Here, the Reddit Posts show consumers discussing the word "ice" to reference a type or category of product, when combined with a flavor, for which there are further subsets. (*See, e.g.*, Reddit Posts at 7 ("When I use a Hyppe bar with a fruit/ice flavor, it's so cool and refreshing....I've tried buying ice flavors from Coastal Clouds and Red's now but neither gives that real ice blast[.]").) This evidence indicates a mark's genericness. *See Khan*, 419 F. Supp. 3d at 567 (noting a generic term "'refers, or has come to be understood as referring, to the genus of which the particular product is a species'" (quoting *Abercrombie & Fitch Co.*, 537 F.2d at 9); *Courtenay Commc'ns Corp.*, 334 F.3d at 214 n.2 ("Essentially, a mark is generic if, in the mind of the purchasing public it does not distinguish products on the basis of source but rather refers to the type of product.").

**4. News Articles**

Defendants produced news articles using "ice" in the context of "e-juices" used with e-cigarettes and vaping products. (Defs. 56.1 ¶ 4; ECF No. 102-7, Exhibit 3 to the Hyland Declaration, ("Defs. Ex. 3").) Specifically, Defendants produced web versions

of articles from, for example, the Columbus Dispatch, the Honolulu Star, NPR, the San Francisco Chronicle, the Wall Street Journal, and the Winston-Salem Journal. (Defs. Ex. 3.) Fantasia does not dispute the existence of the news articles. (Pl. 56.1 at 4.) Fantasia does dispute – again, without citing to any admissible evidence - that the news articles demonstrate generic uses of "ice." (*Id.*) Fantasia also states that Defendants' Exhibit 3 is not admissible evidence for the conclusion of genericness. (*Id.*) As to admissibility, to the extent Fantasia argues that the news articles are inadmissible, the Court disagrees for the same reasons noted, *supra*, regarding the Reddit posts.

Further, "newspaper and magazine use of a term in a generic sense is strong evidence of genericness." *Pilates, Inc.*, 120 F. Supp. 2d at 300 (citing *Harley-Davidson, Inc. v. Grottanelli*, 164 F.3d 806, 811 (2d Cir. 1999)). Here, the news articles demonstrate generic uses of "ice" to note a type of e-cigarette and vaping product with flavors and categories of flavors generally (*see, e.g.*, Defs. Ex. 3 at 25 (article asking, "Fancy a mango, watermelon or lemon-Ice flavored vape? You are in luck. They are being sold online by Puff Bar, a brand that last year was ordered to take its e-cigarettes off the U.S. market")), or at times noting specific flavors in a non-source-identifying manner (*see, e.g., id.* at 5 (article noting that "[w]ith candy-flavored products like 'Mango Ice,' 'Milkshake' and 'Blueberry Muffin,' tobacco companies have

27

hooked our children on nicotine")).[9] In turn, although Fantasia is correct that "examples of newspaper and magazine use of" a phrase are "not proof positive" of its genericness, *Murphy Door Bed Co. v. Interior Sleep Sys., Inc.*, 874 F.2d 95, 101 (2d Cir. 1989), such evidence is, nonetheless, "a strong indication of the general public's perception," *id*. Here, the news articles use "ice" in a non-source-identifying manner. Fantasia offers no admissible evidence otherwise. (*See* Pl. 56.1 at 4.)

## 5. Commonly Used Alternative

Finally, the record does not indicate that "there are commonly used alternative means to describe the product or service," *Pilates, Inc.*, 120 F. Supp. 2d at 297, though neither party explicitly argues whether there are commonly used alternatives. Here, the similar use of "ice" and its variations by nearly five dozen different competitors depicted in Exhibit 1 to the Hyland Declaration denoting the same thing — e-liquid and prefilled disposable e-cigarette products with flavors imparting a cooling

---

[9] Defendants also offer three articles regarding the term "ice" in the context of smoking products that were published in the last year from the websites of the National Institutes of Health and the Federal Drug Administration, noting that these articles were published after Defendants' initial Statement of Material Facts was submitted. (*See* ECF No. 102-1, Defendants' Memorandum, at 19 n.5 (citing to internal pagination).) Defendants argue that the articles are subject to judicial notice, citing *Brooklyn Heights Ass'n, Inc. v. Nat'l Park Serv.*, 777 F. Supp. 2d 424, 432 (E.D.N.Y. 2011). However, the *Brooklyn Heights* case is not persuasive; it only briefly mentions that although "a court reviewing an agency action is generally limited to the administrative record, the Court may take judicial notice of the BBP website, which is a government publication." *Id*. at 432 n.6. Here, this Court is not reviewing an agency action. However, because the Court finds that "ice" is generic, it need not decide whether to take judicial notice of the government articles.

sensation, rather than as a source-identifying mark — demonstrates the lack of a commonly used alternative.

Further, even if an alternative means of description exists, no reasonable juror based on the record could find that such alternative was *common*. *See Genesee Brewing Co.*, 124 F.3d at 148 (noting that the mere "availability of alternative means of describing the product does not automatically preclude a finding that a trademark is generic"). Indeed, in *Pilates,* the plaintiff argued that there were "many other names to describe body conditioning exercise instruction services that are similar to but distinct from PILATES," but the court found that did "not undercut the credible and voluminous testimony that there is no other way that is commonly understood to describe Pilates exercises." *Pilates, Inc.*, 120 F. Supp. 2d at 298-99.

**6. Fantasia Presents Insufficient Evidence to Create Any Genuine Issue of Material Fact as to Genericness of "Ice"**

In turn, Fantasia produced (1) a copy of a settlement agreement; (2) images of its own products and their use of the term "ICE"; (3) three declarations from individual wholesalers and retailers; and (4) copies of its registrations. (See ECF No. 103-1, Confidential Settlement Agreement; ECF No. 103-2, Product Images; ECF No. 103-3, Personal Declaration of Ziad Meziab ("Meziab Declaration"); ECF No. 103-4, Personal Declaration of Sami Romman ("Romman Declaration"); ECF No. 103-5, Personal Declaration of

Yousef Nasereddin ("Nasereddin Declaration"); ECF No. 103-7, Exhibit A, '201 Registration; ECF No. 103-8, Exhibit B, '173 Registration).) The Court finds irrelevant to the issue of genericness Fantasia's settlement agreement. *See generally* Fed. R. Evid. 408. Further, Fantasia's own product images are not responsive to Defendants' genericness arguments.

As to Fantasia's registrations, as noted above, Fantasia improperly grounds its argument in the conclusive presumption of validity of its incontestable marks, ignoring that "[a]n incontestable mark that becomes generic may be canceled at any time." *Park 'N Fly, Inc.*, 469 U.S. at 194-95.

As to the declarations, all three are from presidents of wholesalers of, *inter alia*, vaping- and tobacco-related products. (*See* Meziab Declaration; Romman Declaration; and Nasereddin Declaration.) The three declarations - nearly identical to each other – each state that the declarants associate the ICE Trademarks with Fantasia's products; that it was "unclear" to each declarant whether other brands using "ice" had products sponsored or licensed by Fantasia; and that each of the declarants had witnessed one or more instances of customer confusion by the use of "ice" by companies other than Fantasia. (*See id.*)

The three personal declarations are insufficient to create a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 587. First, to the extent the three declarations

state the views of the wholesalers themselves, the declarations are not probative of the "primary significance" of the term "ice" to the "buying public," which is the "test for genericness," *Horizon Mills Corp.*, 161 F. Supp. 2d at 212-13, because the three declarations are from three presidents of wholesalers of vaping- and tobacco-related products who are industry professionals and "not representative of the typical consumer." *LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*, 209 F. Supp. 3d 612, 672 (S.D.N.Y. 2016), *aff'd sub nom. LVL XIII Brands, Inc. v. Louis Vuitton Malletier SA*, 720 F. App'x 24 (2d Cir. 2017) (finding that anecdotal evidence of actual confusion where most involved inquiries by fashion industry professionals and "had a pre-established personal or business relationship with" plaintiff were not representative of the typical consumer).

Second, even though the three personal declarations generally reference witnessing consumer confusion from other companies using "ice," the declarations, without more, are insufficient to establish a genuine issue of material fact as to genericness, even reading the declarations in the light most favorable to Fantasia. Fantasia did not produce a single consumer survey, or anything else besides the three personal declarations of industry professionals, to demonstrate the "'primary significance'" of "ice" "to the buying public[.]" *Horizon Mills Corp.*, 161 F. Supp. 2d at 212, 220 (finding that "on summary judgment, a consumer

survey would be particularly helpful in divining what the principal significance of [the term at issue] is to the consuming public"); *see Jewish Sephardic Yellow Pages, Ltd. v. DAG Media, Inc.*, 478 F. Supp. 2d 340, 370 (E.D.N.Y. 2007) (finding, in a summary judgment analysis for secondary meaning, that "unlike a survey of disinterested consumers, affidavits from a handful of individuals doing business with one of the parties pose issues of objectivity; understandably, courts have concluded that 'testimony from persons closely associated with the plaintiff does not adequately reflect the views of the buying public'"); *c.f. Frito-Lay, Inc.*, 704 F. Supp. at 440 (denying summary judgment on defendant's counterclaim seeking cancellation of plaintiff's mark based on genericness when, *inter alia*, defendant "offered no proof of widespread, as distinguished from fairly scattered, consumer use of 'ruffles' as a generic term for food in general or for potato chips in particular, even though the mark has been in use for potato chips for over thirty years" and there was "no evidence of widespread industry use").

Judge Buchwald's summary judgment decision in *Universal Church, Inc. v. Universal Life Church/ULC Monastery* is instructive. There, plaintiff brought, *inter alia*, a trademark infringement action in connection with its registration of various marks, including 'Universal Church' and 'The Universal Church,'" where some marks were incontestable, and where Defendant moved for

summary judgment seeking cancellation of the marks. *Universal Church, Inc.*, No. 14-CV-5213 (NRB), 2017 WL 3669625 at *1.

Judge Buchwald found that "universal" is generic as applied to the churches. Defendants presented evidence that "universal" was understood to refer to the entire Christian Church or all Christians collectively; that "numerous churches use 'universal' and 'universal church' in their name"; and that "'universal' is used in the name of the denomination, Unitarian Universalism... while 'universal's' etymological counterpart, 'catholic,' is used in the name of the largest Christian denomination, the Roman Catholic Church." *Id.* at *7-8. In contrast, plaintiff produced a photograph of one of its churches and a newsletter and testimony from its own employees, to which the court determined that "'little probative value' attache[d]...because '[t]rademark law is skeptical of the ability of an associate of a trademark holder to transcend personal biases to give an impartial account of the value of the holder's mark.'" *Id.* at *8-9.

On balance, Judge Buchwald found "little evidence that the relevant public understands 'Universal Church' as referring to plaintiff, despite the fact that the USPTO registered the mark as having achieved secondary meaning and subsequently granted it incontestable status." *Id.* at *8. Specifically, the court noted:

> [E]ven if we were to accept plaintiff's claim that plaintiff uses the "Universal Church" mark in connection with its physical churches and broadcasts,

33

it does little to show how the mark is understood by
the vast majority of the "relevant public" who do not
belong to plaintiff's church. With respect to those
individuals, the only evidence in plaintiff's favor
appears to be two articles referring to plaintiff as
the "Universal Church." *See* Zibas Decl. (ECF No. 91),
Ex. EE (N.Y. Post article); Daniels Decl. (ECF No.
123), Ex. 23 (N.Y. Times article). Thus, we find that
there is virtually no evidence in the record that
anyone in the relevant public, outside plaintiff's own
members, understands "Universal Church" as referring
to plaintiff.

*Id.* at *9 (footnote omitted). "Based on this record," Judge
Buchwald held that "the primary significance of 'universal church'
to the relevant public is a type of church rather than plaintiff,
namely one that considers itself to be universal in the sense of
representing the entire Christian church."

The same analysis applies here. The primary significance of
the term "ice" to the relevant public is a genus of flavors for
tobacco and smoking products like electronic cigarette and vaping
devices, rather than Fantasia itself. *See Genesee Brewing Co.*, 124
F.3d at 144, 148-49 (finding "Honey Brown Ale" a generic mark for
a brown ale brewed with honey); *Khan*, 419 F. Supp. 3d at 567
(noting that a generic term "refers, or has come to be understood
as referring, to the genus of which the particular product is a
species" (quoting *Abercrombie & Fitch Co.*, 537 F.2d at 9)).

Ultimately, Fantasia presents no evidentiary facts creating
a genuine dispute as to whether "ice" or "iced" are generic to
tobacco products and liquids for smoking products like electronic

34

cigarettes and vaping devices, and thus no reasonable jury could find for Fantasia. *See Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 587.

## II. Defendants' Counterclaims to Cancel the Incontestable Marks

### A. Incontestable Marks Can Be Cancelled if Generic

"An incontestable mark that becomes generic may be canceled at any time pursuant to" 15 U.S.C. § 1064. *Park 'N Fly, Inc.*, 469 U.S. at 195.

In opposition to Defendants' motion, Fantasia mistakenly argues that an incontestable mark cannot be cancelled because being a "common word" is not a specific defense in 15 U.S.C. § 1115(b). (*See* ECF No. 103, Pl. Mot. at 4.) Fantasia ignores 15 U.S.C. § 1064, "Cancellation of registration," which states in relevant part that a "petition to cancel a registration of a mark, stating the grounds relied upon, may...be filed as follows...(3) At any time if the registered mark becomes the generic name for the goods or services, or a portion thereof, for which it is registered[.]" 15 U.S.C. § 1064(3); *see also Tiffany & Co.*, 994 F. Supp. 2d at 480 (noting even a statutorily incontestable mark can become "invalid and cancelled if it has come to be 'the generic name for the goods or services, or a portion thereof, for which it is registered'") (quoting 15 U.S.C. § 1064(3))).

### B. Cancellation of ICE Trademarks

"In any action involving a registered mark the court may...order the cancelation of registrations, in whole or in part[.]" 15 U.S.C. § 1119; *see also Khan*, 419 F. Supp. 3d at 567 ("[A] federal court may cancel the registration of a federally registered trademark" (internal quotation omitted)); *Horizon Mills Corp.*, 161 F. Supp. 2d at 214 ("[U]nder 15 U.S.C. § 1119, this Court may also direct the PTO to cancel a mark").

Fantasia's '201 Registration covers "ICE" in the context of the following goods and services: "Hookah tobacco; Molasses tobacco; Smoking tobacco; Tobacco" under International Class 34. (Pl. 56.1 ¶ 22; ECF No. 103-7, Exhibit A). Fantasia's '173 Registration covers "ICE" in the context of the following goods and services: "'Electronic hookah liquid (e-liquid) consisting of flavorings in liquid form used to fill electronic hookahs or electronic hookah cartridges; Vapor liquid consisting of flavorings in liquid form used to fill electronic cigarette vaporizers or vaporizing cigarette cartridges' under International Class 30 and 'Hookah tobacco; Herbal molasses; Herbs for smoking; Molasses tobacco; Smoking molasses; Shisha; Vapor stones for electronic hookahs; Electronic hookahs; Cartomizers, namely, combination electronic cigarette refill cartridges sold empty and atomizers, sold as a component of electronic cigarettes' under International Class 34." (Pl. 56.1 ¶ 23; ECF No. 103-8, Exhibit B.)

36

Because this Court finds that "ice" is generic as to the goods and services described in the '201 and '173 Registrations, it grants Defendants' motion for summary judgment seeking cancellation of Fantasia's ICE Trademarks, including but not limited to the extent they cover tobacco for smoking and liquids used in hookah, electronic cigarette, and vaping products and orders the cancellation of Fantasia's '201 and '173 Registrations pursuant to 15 U.S.C. § 1119.

### III. Fantasia's Claims

For the reasons below, summary judgment is granted on Fantasia's remaining claims against Defendants.

### A. Infringement and Unfair Competition Claims

Fantasia brings federal trademark infringement claims under 15 U.S.C. § 1114, Section 32 of the Lanham Act, as well as claims of unfair competition under 15 U.S.C. § 1125(a), Section 43(a) of the Lanham Act. Fantasia brings its federal infringement claims under both the '201 Registration and the '173 Registration.

To prevail on a claim under § 1114, "a plaintiff must demonstrate: (1) 'that it has a valid mark entitled to protection,' and (2) 'that the defendant's use of that mark is likely to cause confusion.'" *Van Praagh v. Gratton*, 993 F. Supp. 2d 293, 301 (E.D.N.Y. 2014). The same is required to prevail under § 1125(a). *See Est. of Ellington ex rel. Ellington v. Harbrew Imports Ltd.*, 812 F. Supp. 2d 186, 192 (E.D.N.Y. 2011) ("A party establishes

liability under Section 43(a) of the Lanham Act if it can demonstrate '(1) that it has a valid trademark entitled to protection under the Act, and (2) defendant's actions are "likely to cause confusion."'"). Indeed, the "standards governing claims for unfair competition, under Section 43(a) of the Lanham Act, and for trademark infringement, under Section 32, are substantially the same" and "[b]oth claims are governed by a 'familiar two-prong test'...'which looks first to whether the plaintiff's mark is entitled to protection, and second to whether defendant's use of the mark is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods.'" *Jackpocket, Inc. v. Lottomatrix NY LLC*, 645 F. Supp. 3d 185, 228 (S.D.N.Y. 2022), *aff'd*, No. 23-12-CV, 2024 WL 1152520 (2d Cir. Mar. 18, 2024) (internal quotation omitted).

Because there is no genuine dispute that "ice" is generic as to tobacco products and liquids for smoking products like electronic cigarettes and vaping devices, and because the "assertion that a trademark is generic presents a defense, even to an incontestable trademark, because generic terms cannot be trademarked in the first place," *Fantasia Distribution, Inc.*, 693 F. Supp. 3d at 351, summary judgment is proper as to Fantasia's Lanham Act claims under §§ 1114 and 1125(a). Both of Fantasia's Lanham Act claims, relying on Fantasia's two ICE Trademarks covering tobacco and electronic cigarette and vaping products,

require a mark entitled to protection, but "[a] generic term is a common name" and "[a] common name, available to anyone, is never entitled to trademark protection." *Meredith Corp.*, 991 F.2d at 1075.

Fantasia also brings a claim of "Common Law Trademark Infringement and Unfair Competition," and a claim of "Unfair Competition Under New York Law." (ECF No. 1, Compl., Counts 12 and 13, ¶¶ 86-95.) To the extent Fantasia alleges infringement and unfair competition of a common law trademark, summary judgment is also granted for the same reasons as above: that "[a] generic mark...receives no trademark protection." *Time, Inc. v. Petersen Pub. Co. L.L.C.*, 173 F.3d 113, 118 (2d Cir. 1999).

Further, Count XII is virtually identical to Count XIII, which alleges unfair competition under New York law. "Courts employ substantially similar standards when analyzing claims for trademark infringement under the Lanham Act, 15 U.S.C. § 1114(1)(a); false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a); trademark infringement under New York common law; and unfair competition under New York common law." *Van Praagh*, 993 F. Supp. 2d at 301 (noting that a "federal claim of false designation of origin" is "also referred to as a claim for unfair competition" under § 1125(a)); *see also Now-Casting Econ., Ltd. v. Econ. Alchemy LLC*, 628 F. Supp. 3d 501, 516-17 (S.D.N.Y. 2022), *reconsideration denied*, No. 18-CV-2442 (JPC), 2023 WL 3724155

(S.D.N.Y. May 30, 2023), *aff'd*, No. 23-947, 2024 WL 2720235 (2d Cir. May 28, 2024) (noting that the "legal standards" for common law trademark infringement and unfair competition under New York law "are 'virtually identical' to the standards for trademark infringement and unfair competition under the Lanham Act, except that New York common law claims 'require an additional showing of bad faith'").

Here, not only has Fantasia presented no evidence of "bad faith," but simply put, "[a] party that fails to prevail on its Lanham Act claims thus cannot prevail on New York common law claims for infringement and unfair competition." *Now-Casting Econ., Ltd.*, 628 F. Supp. at 517; *see also Universal Church, Inc.*, 2017 WL 3669625, at *16 (after finding plaintiff's trademark to be generic, dismissing New York common law unfair competition and trademark infringement claims without analysis in part because "the standards...are essentially the same as under the Lanham Act").

**1. Fair Use**

Even if Fantasia did have valid, non-generic marks, summary judgment is still warranted on Fantasia's claims under the Lanham Act and common law claims of infringement and unfair competition based on the defense of fair use. Section 33(b)(4) of the Lanham Act defines fair use by an alleged infringer as "a use, otherwise than as a mark,...of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or

40

services of [a] party."   15 U.S.C. § 1115(b)(4); *see Dessert Beauty, Inc. v. Fox*, 568 F. Supp. 2d 416, 423 (S.D.N.Y. 2008), *aff'd*, 329 F. App'x 333 (2d Cir. 2009) ("Even if a party's conduct would otherwise constitute infringement of another's trademark, fair use provides an absolute defense to liability.").

To prevail on a fair use defense, the Defendants must show: "'that the use was made (1) other than as a mark, (2) in a descriptive sense, and (3) in good faith.'" *VOX Amplification Ltd. v. Meussdorffer*, 50 F. Supp. 3d 355, 375 (E.D.N.Y. 2014) (quoting *Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013); *Wonder Labs, Inc. v. Procter & Gamble Co.*, 728 F. Supp. 1058, 1067 (S.D.N.Y. 1990) (noting that "[t]he standard for unfair competition under New York law is very similar to the standards of the Lanham Act....Thus, the defense that the defendant's use of the mark is purely descriptive and not as a trademark equally precludes recovery for common law unfair competition." (citing *American Footwear Corp. v. General Footwear Co.*, 609 F.2d 655, 662 (2d Cir.1979)).

As discussed above, Hyland Declaration Exhibit 4 demonstrates that Defendants use "ice" and "iced" "other than as a mark." (Defs. Ex. 4.) Fantasia offers no evidence to the contrary. Defendants' use of the terms "other than as a mark" is "evidenced by the fact that the source of the defendants' product is clearly identified by the prominent display of the defendants' own trademarks."

41

*Cosmetically Sealed Indus.*, 125 F.3d at 30. Further, Defendants use the "ice" and "iced" terms in a "descriptive sense," which "includes more than just 'words that describe a characteristic of the goods, such as size or quality'" but also "covers a 'tendency' to describe goods 'in a broad sense, including...words or images that more abstractly identify some information about the goods in question.'" *Solid 21, Inc.*, 96 F.4th at 276. Here, Defendants use "ice" and "iced" to note a category of product flavors that provide a sense of a cooling effect.

Finally, courts equate the good faith prong "with 'the subsequent user's intent to trade on the good will of the trademark holder by creating confusion as to source or sponsorship.'" *Solid 21, Inc.*, 96 F.4th at 278. Further, "[t]hough a showing of good faith is its own requirement under the statute, there is some overlap between fair use's three prongs; evidence that the defendant used the term descriptively and not as a mark might also demonstrate that the defendant acted in good faith." *Id.* at 279. Here, Defendants used the term "ice" descriptively, as noted above. The undisputed record shows that Defendants used "ice" and "iced" in good faith, and there is no evidence that Defendants intended to trade on Fantasia's good will by creating confusion as to the source of their products.

Accordingly, summary judgment is granted on Fantasia's claims of federal trademark infringement and unfair competition and

42

common law trademark infringement and unfair competition. *See Van Praagh*, 993 F. Supp. 2d at 301; *Wonder Labs, Inc. v. Procter & Gamble Co.*, 728 F. Supp. at 1067.

**B. Claim of Unfair and Deceptive Trade Practice**

Fantasia also alleges a claim of Unfair and Deceptive Trade Practices in Count XI of its Complaint in violation of "statues of several states," including California, Colorado, Delaware, Georgia, Hawaii, Illinois, Maine, Minnesota, Nebraska, New Mexico, New York, Ohio, and Oklahoma. (ECF No. 1, Compl. at 22.)

On the whole, these thirteen states' statutes require, *inter alia*, alleged conduct that is deceptive, unfair, misleading, fraudulent, or likely to cause confusion or to deceive the public. Further, for some, an analysis under the Lanham Act would be dispositive. *See, e.g.*, *Crossfit, Inc. v. Quinnie*, 232 F. Supp. 3d 1295, 1310 (N.D. Ga. 2017) ("The federal Lanham Act analysis governs the analysis of CrossFit's state law trademark claims...for deceptive trade practices in violation of Georgia's Uniform Deceptive Trade Practices Act under O.C.G.A. §§ 10-1-370 to 10-1-375."). For other states, the statute requires some allegations that unfair acts took place in the specific state. *See BCBSM, Inc. v. Walgreen Co.*, 512 F. Supp. 3d 837, 856 (N.D. Ill. 2021) (finding plaintiffs' claims under the "Illinois Consumer Fraud and Deceptive Business Practices Act...fail because

Plaintiffs have not pleaded [that] any of the unfair acts took place primarily and substantially in Illinois").

Fantasia's three personal declarations are insufficient, without more, to create a genuine dispute of material fact regarding whether there is a likelihood of confusion. Further, Fantasia offers no evidence of deceptive, unfair, misleading, or fraudulent conduct by Defendants at all, much less in the states alleged. As discussed extensively above, no evidence exists in the record from which a jury could infer that Defendants failed to act in good faith. Accordingly, summary judgment is granted on Fantasia's claim of Unfair and Deceptive Trade Practices under the state laws alleged.

## IV. Exceptional Cases Warranting Attorneys' Fees

Though they offer no facts and make no arguments to support it, Defendants ask this Court to declare this matter an "exceptional case" that warrants attorney's fees against Fantasia. (ECF No. 102, Defs. Mot. at 1-2.) The failure to offer any evidence or proffer any argument "as to why this case should be considered to be exceptional" "is a sufficient ground upon which to deny the fees request[.]" *Lighting & Supplies, Inc. v. New Sunshine Energy Sols. Inc.*, No. 20-CV-2790 (FB) (VMS), 2023 WL 2815623, at *8 (E.D.N.Y. Mar. 14, 2023), *report and recommendation adopted*, No. 20-CV-2790 (FB) (VMS), 2023 WL 2674376 (E.D.N.Y. Mar. 29, 2023). Even if Defendants had proffered arguments, the Court finds that

44

this case is not exceptional and denies Defendants' request for attorneys' fees.

Under the Lanham Act, a court "in exceptional cases may award reasonable attorney fees to the prevailing party." *Sleepy's LLC v. Select Comfort Wholesale Corp.*, 612 F. Supp. 3d 115, 132 (E.D.N.Y. 2020) (quoting 15 U.S.C. § 1117(a)). "Courts in the Second Circuit generally determine cases to be exceptional under the *Octane Fitness* standard when litigants have acted unreasonably or in bad faith." *Id.* at 133 (quoting *Travel Leaders Grp., LLC v. Corley*, No. 19-CV-1595, 2019 WL 6647319, at *14 n.7 (S.D.N.Y. Dec. 5, 2019). Employing a "'case-by-case exercise,' courts may consider factors including 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Lighting & Supplies, Inc.*, No. 20-CV-2790 (FB) (VMS), 2023 WL 2815623, at *6 (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 & n.4 (2014) and *4 Pillar Dynasty LLC v. New York & Company, Inc.*, 933 F.3d 202, 215 (2d Cir. 2019)).

There is no indication that Fantasia acted unreasonably, or in bad faith. Nothing suggests, and Defendants do not offer, evidence that Plaintiff acted with frivolousness, objective unreasonableness, ill motive, or anything else to justify

45

compensation. Accordingly, this Court finds that this matter is not an exceptional case warranting an award of attorneys' fees.

## Conclusion

For the reasons stated above, Defendants' motion for summary judgment is granted as to Fantasia's remaining claims against Defendants. Defendants' motion for summary judgment seeking cancellation of Fantasia's U.S. Trademark Registration Nos. 3,998,201 and 4,600,173 and an order to cancel the ICE Trademarks' registrations pursuant to 15 U.S.C. § 1119 is granted. The Clerk is respectfully ordered to enter judgment in favor of all Defendants and close this case.

**SO ORDERED.**

Dated:     August 28, 2024
           Brooklyn, New York

_____
KIYO A. MATSUMOTO
United States District Judge
Eastern District of New York